**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.  18-20256-cr-JEM**

UNITED STATES OF AMERICA,

            Plaintiff,

    vs.

                                Miami, Florida
                                May 30, 2018
RAUL SOSA, SENIOR and            Pages 1-33
RAUL SOSA, JUNIOR,

            Defendants.
_____

**TRANSCRIPT OF CHANGE OF PLEA**
**BEFORE THE HONORABLE JOSE E. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**FOR THE PLAINTIFF:**
                        *United States Attorney's Office*
                        **BY:  EDWARD STAMM, A.U.S.A.**
                        99 Northeast Fourth Street
                        Miami,  Florida 33132

**FOR DEFENDANT RAUL SOSA SENIOR:**

                        *Federal Public Defender's Office*
                        **BY:  CHRISTIAN DUNHAM, A.F.P.D.**
                        150 West Flagler Street
                        Suite 1700
                        Miami, Florida 33130

**FOR DEFENDANT RAUL SOSA JUNIOR:**

                        **BY:  PAUL D. PETRUZZI, ESQ.**
                        8101 Biscayne Boulevard
                        PH-701
                        Miami, Florida 33138

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1   **REPORTED BY:**        **DAWN M. SAVINO, RPR**
                            **Official Court Stenographer**
2                           **400 N. Miami Avenue, 10S03**
                            **Miami, Florida  33128**
3                           **Telephone:  305-523-5598**

4

5                     P-R-O-C-E-E-D-I-N-G-S

6           (Court called to order)

7           COURTROOM DEPUTY:  Case number

8   18-20256-criminal-Martinez, United States of America versus Raul

9   Sosa, Senior and Raul Sosa, Junior.

10          Counsel, please state your appearance.

11          MR. STAMM:  Good morning, Your Honor.  Edward Stamm and

12  Maurice Johnson, Assistant US Attorneys.  With us Special Agent

13  Derrick Wingle of the FBI, Task Force Sergeant Alex Castenada,

14  Special Agent Willie Creech (ph) of the FBI, and Task Force

15  Sergeant Javier Garcia, Your Honor.

16          THE COURT:  Good morning.

17          MR. DUNHAM:  Good morning, Your Honor.  Christian

18  Dunham, Assistant Federal Defender on behalf of Raul Sosa,

19  Senior who is present with the services of the Spanish

20  Interpreter.

21          THE COURT:  Good morning.

22          MR. PETRUZZI:  Good morning, Your Honor.  Paul Petruzzi

23  on behalf of Raul Sosa, Junior.  Mr. Sosa, Junior is present

24  before the Court on bond.

25          THE COURT:  Good morning.  All right.  Would you swear

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    the interpreters please.

2              (Spanish interpreter placed under oath)

3              COURTROOM DEPUTY:  Please state your name for the

4    record.

5              THE INTERPRETER:  Good morning, Maria Kisic.

6              THE COURT:  Good morning, Ms. Kisic.

7              All right.  We're here on a change of plea on both

8    Mr. Sosa, Senior and Mr. Sosa, Junior.  Is that correct,

9    gentlemen?

10              MR. DUNHAM:  Yes, Your Honor.

11              MR. PETRUZZI:  Yes sir, Your Honor.

12              THE COURT:  Okay.  Now, what we're going to do is we're

13    going to do them both together.  In order to do them both

14    together, we have to have certain ground rules so that the

15    record is very clear.  There is a record being made of these

16    proceedings.  When I ask a question, I would like Mr. Sosa,

17    Senior to answer first and then Mr. Sosa, Junior.  That way, it

18    will be clear that the first person that speaks is Mr. Sosa,

19    Senior.  If I'm not looking up and they change and they do it in

20    the wrong order, I ask both attorneys to please call it to my

21    attention so that the record can be made clear.

22              Is that clear, Mr. Sosa, Senior?

23              DEFENDANT RAUL SOSA SENIOR:  (Through Spanish

24    Interpreter) Yes.

25              THE COURT:  Mr. Sosa, Junior?

1          DEFENDANT RAUL SOSA JUNIOR:  Yes.

2          THE COURT:  Okay.  Both of you please stand to be

3    sworn.

4          COURTROOM DEPUTY:  Please raise your right hands.

5          (Defendants placed under oath)

6          DEFENDANT RAUL SOSA JUNIOR:  Yes.

7          THE COURT:  Mr. Sosa, Senior first.

8          DEFENDANT RAUL SOSA SENIOR:  Yes.

9          DEFENDANT RAUL SOSA JUNIOR:  Yes.

10          THE COURT:  Okay.  Please be seated.  All right.

11          I want to advise you both that you're now under oath,

12    and if you answer any questions falsely, your answers may later

13    be used against you in a separate prosecution for perjury.

14    Perjury is a separate offense, but a very serious one, sometimes

15    more serious than the underlying offense.

16          Do you understand that?

17          DEFENDANT RAUL SOSA SENIOR:  Yes.

18          DEFENDANT RAUL SOSA JUNIOR:  Yes.

19          THE COURT:  Okay.  I'm going to ask you a series of

20    questions to make sure that you understand these proceedings.

21    It's very important that if you do not understand the question,

22    you don't answer it.  You stop, you ask your lawyer, you ask me;

23    between the two of us, I am sure we'll be able to explain

24    everything to your complete satisfaction so that you fully

25    understand it.

```
 1            On the other hand, if you do answer a question, I would
 2     assume that you understood it, and I believe that anybody
 3     reading the record that's being made of these proceedings at a
 4     later time would be within their rights to assume that if you
 5     answered a question, you understood it.
 6            So in short, if you don't understand, stop, don't
 7     answer.
 8            Do you understand what I just said?
 9            DEFENDANT RAUL SOSA SENIOR:  Yes.
10            DEFENDANT RAUL SOSA JUNIOR:  Yes.
11            THE COURT:  All right.  Please tell me your full name.
12            DEFENDANT RAUL SOSA SENIOR:  Raul Sosa.
13            DEFENDANT RAUL SOSA JUNIOR:  Raul Sosa, Junior.
14            THE COURT:  What is your age?
15            DEFENDANT RAUL SOSA SENIOR:  55 years of age.
16            DEFENDANT RAUL SOSA JUNIOR: 23.
17            THE COURT:  What is the extent of your formal
18     education?
19            DEFENDANT RAUL SOSA SENIOR:  7th grade.
20            THE COURT:  When you say 7th grade, did you finish the
21     7th grade?  Drop out in the 7th grade?  What do you mean by 7th
22     grade?
23            DEFENDANT RAUL SOSA SENIOR:  I finished 7th grade.
24            THE COURT:  All right.
25            You, sir?
```

```
 1                DEFENDANT RAUL SOSA JUNIOR:  High school.
 2                THE COURT:  High school what?  Graduated?
 3                DEFENDANT RAUL SOSA JUNIOR:  Yes.
 4                THE COURT:  Okay.  What is the -- have you ever been
 5      treated for any mental illness?
 6                DEFENDANT RAUL SOSA SENIOR:  No.
 7                DEFENDANT RAUL SOSA JUNIOR:  No.
 8                THE COURT:  Have you ever been treated for any drug
 9      addiction?
10                DEFENDANT RAUL SOSA SENIOR:  No.
11                DEFENDANT RAUL SOSA JUNIOR:  No.
12                THE COURT:  Are you presently under the influence of
13      any type of drug, medication or alcoholic beverage?
14                DEFENDANT RAUL SOSA SENIOR:  No.
15                DEFENDANT RAUL SOSA JUNIOR:  No.
16                THE COURT:  Have you received a copy of the superseding
17      indictment pending against you, that is the written charges
18      against you?
19                DEFENDANT RAUL SOSA SENIOR:  Yes.
20                DEFENDANT RAUL SOSA JUNIOR:  Yes.
21                THE COURT:  Have you had the opportunity to fully
22      discuss these charges and the case, in general, with your
23      attorney?
24                DEFENDANT RAUL SOSA SENIOR:  Yes.
25                DEFENDANT RAUL SOSA JUNIOR:  Yes.
```

1          THE COURT:  Are you fully satisfied with the

2   representation and advice given to you in this case by your

3   attorney?

4          DEFENDANT RAUL SOSA SENIOR:  Yes.

5          DEFENDANT RAUL SOSA JUNIOR:  Yes.

6          THE COURT:  Counsel, are you satisfied that your client

7   understands these proceedings?  Mr. Dunham?

8          MR. DUNHAM:  Yes, Your Honor.

9          THE COURT:  Mr. Petruzzi?

10          MR. PETRUZZI:  Yes sir, Your Honor.

11          THE COURT:  Okay.  There are certain rights that you

12   waive, or give up, by entering a plea of guilty.  I'm not

13   suggesting there's anything wrong with doing that; in fact,

14   often it's the best thing to do after you've had the opportunity

15   to discuss it with your lawyer and get his advice.  But I don't

16   want somebody at a later time to come in and say well, for

17   example, they didn't know they could cross-examine witnesses, or

18   they didn't know they could issue subpoenas.  So I'm going to go

19   through some of these rights with you now, and make sure that

20   you understand that you are waiving them, or giving them up, by

21   entering a plea of guilty.

22          For example, do you understand that you have the right

23   to plead not guilty to any offense charged against you, and to

24   persist in that plea of not guilty as long as you want?

25          DEFENDANT RAUL SOSA SENIOR:  Yes.

```
 1                    DEFENDANT RAUL SOSA JUNIOR:  Yes.

 2                    THE COURT:  Do you understand that you would have the

 3          right to a trial by jury, during which you would also have the

 4          right to the assistance of counsel for your defense?

 5                    DEFENDANT RAUL SOSA SENIOR:  Yes.

 6                    DEFENDANT RAUL SOSA JUNIOR:  Yes.

 7                    THE COURT:  Do you understand that you have the right

 8          to see and hear all the witnesses against you, and have them

 9          cross-examined in your defense?

10                    DEFENDANT RAUL SOSA SENIOR:  Yes.

11                    DEFENDANT RAUL SOSA JUNIOR:  Yes.

12                    THE COURT:  Do you understand that you have the right

13          not to testify, but that you may voluntarily elect to testify,

14          but that only you can make that decision; not your lawyer, not

15          your family, not your codefendants, not your friends, only you.

16                    DEFENDANT RAUL SOSA SENIOR:  Yes.

17                    DEFENDANT RAUL SOSA JUNIOR:  Yes.

18                    THE COURT:  Do you understand that you have the right

19          to the issuance of subpoenas, or compulsory process, to compel

20          the production of persons and objects here for the purpose of

21          your defense?

22                    DEFENDANT RAUL SOSA SENIOR:  Yes.

23                    DEFENDANT RAUL SOSA JUNIOR:  Yes.

24                    THE COURT:  Do you understand -- I'm sorry.  Did you

25          answer that also?
```

```
 1              DEFENDANT RAUL SOSA JUNIOR:  Yes.

 2              THE COURT:  All right.  Do you understand that you may

 3       have witnesses testify in your defense?

 4              DEFENDANT RAUL SOSA SENIOR:  Yes.

 5              DEFENDANT RAUL SOSA JUNIOR:  Yes.

 6              THE COURT:  Do you understand that by entering a plea

 7       of guilty, if I accept that plea, there will be no trial and you

 8       will have waived, or given up, your right to a trial, as well as

 9       those other rights associated with a trial, some of which I have

10       just discussed with you.

11              DEFENDANT RAUL SOSA SENIOR:  Yes.

12              DEFENDANT RAUL SOSA JUNIOR:  Yes.

13              THE COURT:  Do you understand that the offense to which

14       are you pleading guilty is a felony offense?

15              DEFENDANT RAUL SOSA SENIOR:  Yes.

16              DEFENDANT RAUL SOSA JUNIOR:  Yes.

17              THE COURT:  If I accept your plea, you will be adjudged

18       guilty of a felony, and such adjudication may deprive you of

19       valuable civil rights such as the right to vote, the right to

20       hold public office, the right to serve on a jury, the right to

21       possess any kind of firearm, and if you are an alien, that you

22       may be subject to deportation.

23              DEFENDANT RAUL SOSA SENIOR:  Yes.

24              DEFENDANT RAUL SOSA JUNIOR:  Yes.

25              THE COURT:  Would the Government please advise me of
```

the maximum penalty provided by law, and any mandatory minimum
penalty as to the count or counts to which they are pleading
guilty.

            MR. STAMM:  Yes, Your Honor.  As to the count, they're
pleading guilty to Count 1.  The maximum penalty is five years
imprisonment, and there's no minimum mandatory sentence, Your
Honor.

            THE COURT:  How about supervised release following
imprisonment?

            MR. STAMM:  Yes, up to three years, Your Honor.

            THE COURT:  And is restitution an issue?

            MR. STAMM:  Although it would be required, I don't
believe in the unique facts of this case there will end up being
restitution.

            THE COURT:  And how about a fine?  What is the maximum
fine?

            MR. STAMM:  $250,000, Your Honor.

            THE COURT:  And of course, there's $100 special
assessment for each, correct?

            MR. STAMM:  Yes.

            THE COURT:  All right.  You heard what the maximum
sentence was.  Do you understand that's what you're exposing
yourself to with your plea of guilty?

            DEFENDANT RAUL SOSA SENIOR:  Yes.

            DEFENDANT RAUL SOSA JUNIOR:  Yes.

1      THE COURT:  The United States Sentencing Commission has

2   issued advisory guidelines for judges to consider in determining

3   an appropriate sentence in a criminal case.  Have you and your

4   attorney talked about how the maximum sentence -- excuse me, how

5   the sentencing guidelines might apply to your case?

6      DEFENDANT RAUL SOSA SENIOR:  Yes.

7      DEFENDANT RAUL SOSA JUNIOR:  Yes.

8      THE COURT:  Do you also understand that after it's been

9   determined what guidelines apply, I have the authority, in some

10  cases, to impose a sentence that is more severe or less severe

11  than that called for by the guidelines.

12     DEFENDANT RAUL SOSA SENIOR:  Yes.

13     DEFENDANT RAUL SOSA JUNIOR:  Yes.

14     THE COURT:  Do you understand that parole has been

15  abolished in the federal system?

16     DEFENDANT RAUL SOSA SENIOR:  Yes.

17     DEFENDANT RAUL SOSA JUNIOR:  Yes.

18     THE COURT:  Would the Government please summarize Count

19  1 of the indictment to -- superceding indictment to which the

20  Defendants are pleading, and state the elements of that crime?

21     MR. STAMM:  Yes, Your Honor.  Count 1 charges the

22  Defendants with a conspiracy to pay bribes in connection with a

23  program receiving federal funds.  In particular, charges that

24  Mr. Sosa, Senior and Mr. Sosa, Junior conspired together, along

25  with an Opa Locka City Commissioner, Luis Santiago, a private

1    citizen by the name of Dante Starks, and others, whereby they

2    would pay a bribe of $10,000 to Commissioner Santiago through

3    Mr. Starks and in exchange, Mr. Starks and Mr. Santiago, the

4    Commissioner, would use the Commissioner's position and both of

5    their influence in the city of Opa Locka to ensure that Sosa's

6    towing company received a city contract from the city of Opa

7    Locka that was coming up for bid.  Even though it was an open

8    competitive bid process, they would be guaranteed one of the

9    contracts in exchange for this personal payment bribe.

10           And it charges, of course, that the city of Opa Locka

11   received more than $10,000 in federal funding, assistance and

12   support during the calendar year 2015 when the events took

13   place.

14           THE COURT:  What are the elements of the crime?

15           MR. STAMM:  Yes, Your Honor.  The elements of Section

16   18, United States Code Section 371, are that two or more persons

17   in some way agreed to try to accomplish a shared and unlawful

18   plan.  The Defendant knew the unlawful purpose of the plan and

19   willfully joined it.  During the conspiracy, one of the

20   conspirators knowingly engaged in at least one overt act as

21   described in the superseding indictment, and the overt act was

22   committed at or about the time alleged with the purpose of

23   carrying out or accomplishing some object of the conspiracy.

24           As noted, the object of the conspiracy was to violate

25   18 United States Code Section 666(a)(2), the paying portion of

1    federal programs bribery, and the elements of that offense,

2    which is subsumed within the conspiracy, are giving, offering or

3    agreeing to give a thing of value to any person with the corrupt

4    intent to influence or reward an agent of an organization that

5    receives more than $10,000 in federal funding in any one year

6    period in connection with any business transaction or series of

7    transactions of that organization involving more than $5,000.

8              THE COURT:  All right.  You heard what the Government

9    said.  Is that what you understand you are pleading guilty to?

10             DEFENDANT RAUL SOSA SENIOR:  Yes.

11             DEFENDANT RAUL SOSA JUNIOR:  Yes.

12             THE COURT:  Would the Government make a representation

13   concerning the facts you would be prepared to prove at trial.

14   And if they differ from each Defendant, please point that out.

15             MR. STAMM:  Yes, Your Honor.  For convenience, what I

16   note to the parties also is I'll read the stipulated factual

17   basis for Mr. Sosa, Senior, it is virtually identical to

18   Mr. Sosa, Junior, and I'll note the few portions where something

19   has been added or wording changed, Your Honor.

20             THE COURT:  All right.

21             MR. STAMM:  Stipulated factual basis.  The United

22   States and Raul Sosa, Senior and Raul Sosa, Junior as well in

23   his, hereby stipulate and agree that had this matter proceeded

24   to trial, the United States would have offered evidence and

25   testimony to establish the following factual basis beyond a

1   reasonable doubt.

2   The city of Opa Locka was an incorporated municipality

3   located within the state of Florida and the Southern District of

4   Florida, which was a unit of and subject to the laws of Florida.

5   Opa Locka was a local government that received benefits in

6   excess of $10,000 under a federal program involving a grant,

7   subsidy, loan, guarantee, insurance and any other form of

8   federal assistance during the one year period of calendar year

9   2015.

10   Opa Locka had a commission-manager form of municipal

11   government with a five member elected city commission consisting

12   of a mayor and four commissioners elected from the city at

13   large, who collectively were responsible for enacting

14   ordinances, resolutions and regulations governing the city and

15   for the final award and authorization of certain city contracts.

16   Opa Locka had a city manager appointed by the city

17   commission to serve as the city's chief administrative officer.

18   The city manager was responsible for directing and coordinating

19   the administration of the city in accordance with policies

20   determined by the city commission, the city's charter and code

21   of ordinances, and all applicable federal, state and local laws.

22   Opa Locka also had an assistant city manager who

23   reported directly to the city manager and was responsible for

24   assisting the city manager in the administration of the city's

25   governmental functions, including the oversight of the

1   day-to-day operations of city government.  David Chiverton was

2   the assistant city manager at all relevant times.

3          Among other responsibilities, Opa Locka's finance

4   department was responsible for providing purchasing services for

5   city departments.  Opa Locka maintained a strict policy

6   prohibiting employees from accepting gifts or gratuities from

7   any vendor or business doing business with the city, or seeking

8   to do business with the city.  An individual referred to herein

9   as City Employee 1 was the purchasing officer for the city of

10  Opa Locka.

11          A Florida corporation referred to herein as the towing

12  company was a licensed towing company that did business in

13  Miami-Dade County, Florida.  Raul Sosa, Senior had an informal

14  oral agreement to purchase the towing company from its owner.

15  Raul Sosa, Junior the son of Sosa, Senior was the manager of the

16  towing company.  And I refer to them as Sosa, Senior and Junior

17  then throughout, Your Honor.

18          Luis Santiago was an Opa Locka city commissioner.  As a

19  city commissioner, Santiago was one of the five elected

20  officials collectively responsible for the final award and

21  authorization of certain city contracts, and was an agent of the

22  city of Opa Locka.

23          Dante Starks was a private citizen closely associated

24  with Santiago.

25          On or about April 15, 2015, the city of Opa Locka

 1    published a request for proposals, RFP Number 15-1505100

 2    referred to in afterwards at the towing RFP, seeking bids from,

 3    quote, licensed and experienced towing firms to establish a

 4    multi-year, nonexclusive contract for city-wide rotation towing

 5    services, close the quote.  Section 3.1 of the towing RFP

 6    specified the scope of the contract and the services that would

 7    be required there under.  It also provided that the company

 8    selected would be given first call for all wrecker services

 9    requested by Opa Locka unless a motorist made a specific request

10    for another company.  Bidding companies were required to provide

11    the city with multiple copies of their bid submission.  The bids

12    submitted in response to the towing RFP were subject to review

13    by a five member evaluation committee, the RFP committee, that

14    was required to rate the bids according to set criteria.

15          Gregory Harris, the assistant director of the Opa Locka

16    public works department was a member of the RFP committee.  The

17    members of the RFP committee were subject to a cone of silence

18    prohibiting communication regarding the towing RFP between RFP

19    committee members and any bidder, lobbyist, consultant,

20    potential vendor, service provider, city staff member or city

21    commissioner.

22          Sosa, Senior and Santiago were acquainted through prior

23    business dealings occurring before Santiago became an Opa Locka

24    city commissioner.  On April 17, 2015, Santiago had a telephone

25    conversation with Sosa, Senior and informed Sosa, Senior that

1    the Opa Locka rotational towing contract was open for bidding

2    and he was willing to help Sosa, Senior obtain a towing contract

3    with Opa Locka.

4            Later in the day on April 17, 2015, Santiago and Starks

5    had a telephone conversation and agreed that in exchange for a

6    $10,000 bribe payment from Sosa, Senior, Santiago and Starks

7    would use their position and influence in Opa Locka to ensure

8    that the towing company was selected as one of the companies

9    receiving a city towing contract.

10           On or about April 19, 2015, Sosa, Senior met with

11   Santiago and Starks and agreed to pay a $10,000 bribe to Starks

12   -- Santiago and Starks, to ensure that the towing company

13   received the towing contract with Opa Locka that was open for

14   bids.  Sosa, Senior also made a partial bribe payment of

15   approximately $2,500 in cash to them and designated his son,

16   Sosa, Junior, as the person who would work directly with

17   Santiago and Starks to carry out this illegal arrangement.

18           After making this illegal arrangement, there were

19   numerous telephone conversations and multiple meetings between

20   Sosa, Junior and Santiago and Starks, as well as numerous

21   telephone conversations between Sosa, Senior and Santiago in

22   furtherance of the bribery conspiracy.  There were also multiple

23   meetings where Sosa, Junior delivered illegal cash payments to

24   Starks that were to be shared by Santiago and Starks as payment

25   for using Santiago's official position and their influence to

1   ensure that the towing company was awarded a towing contract

2   with Opa Locka.  These bribe payments were made with cash that

3   Sosa, Senior provided to Sosa, Junior for the purpose of

4   carrying out this illegal bribery scheme.

5        This is -- the last sentence is just slightly different

6   from the proffer of Sosa, Junior.  It just adds one slight

7   phrase, but does not change the substance, Your Honor.

8        Back to Page 5.  Although this stipulated factual basis

9   does not list every call and meeting between either Sosa, Senior

10  or Sosa, Junior and either Starks or Santiago, they included --

11  and this is -- the next portion I'm going to read is not in

12  Sosa, Junior's proffer, but it pertains solely to Mr. Sosa,

13  Senior -- they included numerous telephone conversations between

14  Sosa, Senior and Santiago, including conversations on April 21,

15  2015 and May 12, 2015 during which they discussed the towing

16  contract and bribe payment and the need for Sosa, Junior to meet

17  and coordinate with Starks in preparing the towing RFP bid.

18       During the May 12, 2015 telephone conversations, Sosa,

19  Senior expressed his concern to Santiago about not obtaining the

20  contract, and Santiago reassured him that his company would

21  obtain the contract.

22       It resumes, and the rest that follows is then in

23  Mr. Sosa, Junior's proffer as well.

24       The calls and meetings involving Sosa, Junior included

25  a meeting between Sosa, Junior and Starks on or about April 28,

1    2015, during which Sosa, Junior gave Starks approximately 3,000

2    in cash -- $3,000 in cash to Starks as a partial bribe payment,

3    and a subsequent telephone conversation with Santiago on April

4    28, 2015, during which Sosa, Junior confirmed he gave Starks

5    three streets.  The term streets was used by the conspirators as

6    a code word for thousands of dollars.

7           Following his telephone conversation with Mr. Sosa,

8    Senior on May 12, 2015, Santiago had a telephone conversation

9    later that same day with Sosa, Junior, during which he assured

10   Sosa, Junior they were Number 1 for the towing contract.  This

11   last two sentences are just slightly in a different order in the

12   Sosa, Junior proffer.

13          In furtherance of this illegal bribery arrangement,

14   Starks, in conjunction with Chiverton, arranged for City

15   Employee 1 to assemble and prepare the towing company's bid

16   package with information provided by the towing company.  Since

17   Sosa, Senior had designated him as the person to do the hands-on

18   work, Sosa, Junior provided and caused the necessary company

19   information to be provided to Starks and City Employee 1 so that

20   this portion of the scheme could be completed.  There's just a

21   slight addition that's only in Mr. Sosa's which is the "since

22   Sosa had designated him as".

23          Continuing back with Page 6.  Starks also arranged with

24   a high-ranking Opa Locka city official for the towing RFP

25   submission deadline to be extended from May 15, 2015 to May 20,

1   2015 to allow additional time for the towing company's bid

2   package to be completed and submitted.  To this end, on May 13,

3   2015, Starks sent Sosa, Junior a text message directing him to

4   seek an extension of the towing RFP bid deadline, and on May

5   14th, caused an e-mail to be sent to City Employee 1 requesting

6   that extension.  Following these actions, the extension was

7   granted and the submission deadline was moved to May 20, 2015.

8           Once the towing company's bid package had been

9   assembled, Starks retrieved the multiple copies from city

10  employee one, Starks and Santiago then coordinated with to Sosa,

11  Junior to arrange their delivery to Sosa, Junior, so that he

12  could deliver the towing company's bid to city hall.  To this

13  end, on May 29, 2015, Sosa, Junior and Santiago had a telephone

14  conversation during which Santiago told Sosa, Junior that Starks

15  had everything ready and that Starks wanted, quote, two streets.

16          On the morning of May 20, 2015, Sosa, Junior and Starks

17  exchanged text messages and had a telephone conversation

18  arranging the delivery, and later that morning, Sosa, Junior met

19  with Starks in Opa Locka and obtained the towing company's bid

20  packages from Starks.  Sosa, Junior then delivered these bid

21  packages to Opa Locka city hall in compliance with the

22  submission deadline.

23          The sentence that follows is only on Mr. Sosa, Senior's

24  submission.  Proffer, following the submission of the bid to Opa

25  Locka, Sosa, Senior continued to have telephone conversations

1    with Santiago about the illegal arrangement to ensure the towing

2    company received a contract with Opa Locka.

3         We resume in both then.  Per the towing RFP, the

4    competing bids were supposed to be reviewed and ranked by the

5    RFP committee according to set criteria, and the cone of silence

6    was in place to prevent any contact with the RFP committee

7    members about this process.  The RFP committee was set to meet

8    on June 3, 2015 to rank these bids.

9         In furtherance of this illegal bribery agreement, on

10   June 3, 2015, prior to the RFP committee meeting, Starks had two

11   telephone conversations with RFP committee member Harris and

12   directed Harris to rank the towing company as the Number 1

13   company.  During these calls, Starks also talked about how he

14   had made similar arrangements with other members of the RFP

15   committee.

16        The RFP committee then held its review meeting and the

17   five members submitted their individual evaluations of these

18   bids submitted.  Based solely on the directions received from

19   Starks, Harris ranked the towing company as his Number 1

20   company.  Although the RFP committee did the initial evaluation

21   and ranking, the Opa Locka city commission was required to make

22   the final decision on awarding contracts under the towing RFP.

23   In making this decision, the city commission was not bound to

24   follow the RFP committee's recommendations.

25        On June 24, 2015, the city commission held a meeting

1   and adopted resolution Number 15-9020 authorizing the city

2   manager to execute contracts with four companies, including the

3   towing company, for city-wide towing services on a rotational

4   basis. At this meeting, Santiago used his official position as a

5   city commissioner to move this resolution forward, and he voted

6   in favor of it.

7         Following this vote, Sosa, Junior, on or about June 25,

8   2015, delivered the final bribe payment of approximately 2,500

9   in cash to Starks.  Once again, Sosa, Senior provided the cash

10   to Sosa, Junior for delivery to Starks and Santiago.

11         To execute the decision made by the city commission, on

12   June 10, 2015, the city of Opa Locka and the towing company

13   entered into a towing service agreement making the towing

14   company one of the companies that would provide Opa Locka with

15   city-wide towing services on a rotational basis.  Pursuant to

16   the agreement, the towing company charged vehicle owners certain

17   towing and storage fees, paid the city administrative fees based

18   on the number of vehicles towed there under.

19         The agreement obtained by the towing company through

20   the illegal bribery scheme had a value of more than $5,000.

21         All of the above-described activities took place in the

22   Southern District of Florida and within the time frame alleged

23   in the superseding indictment.

24         THE COURT:  The last date you just read, you said June

25   10th but I think you meant July 10, 2015.

```
 1              MR. STAMM:  I'm sorry, Your Honor.  Yes.  Sorry about
 2     that.  You are correct.
 3              THE COURT:  Okay.  All right.  All right.  Mr. Sosa,
 4     Senior first.  You heard what the Government said.  Do you
 5     believe if this case were to go to trial, they could prove what
 6     they just said?
 7              DEFENDANT RAUL SOSA SENIOR:  Yes.
 8              THE COURT:  Is it true?
 9              DEFENDANT RAUL SOSA SENIOR:  Yes.
10              THE COURT:  All right.  I have here an eight-page
11     document -- I'm sorry, yes.  An eight-page document that is
12     pretty much verbatim what the Government just read into the
13     record.  On that 8th page there appear to be four signatures:
14     That of two prosecutors, that of your attorney, and what appears
15     to be a signature above your name.  Is that your signature?
16              DEFENDANT RAUL SOSA SENIOR:  Yes.
17              THE COURT:  Before you signed it, how did you get to
18     know the -- how did you get the knowledge of what was contained
19     in it?  Do you read the English language or did somebody
20     translate it for you?
21              DEFENDANT RAUL SOSA SENIOR:  A translator translated it
22     for me yesterday.
23              THE COURT:  All right.  Mr. Dunham, can you tell me how
24     you communicated the contents of this document to your client
25     before he executed it?
```

1          MR. DUNHAM:  Yes, Your Honor.  I've gone over it with

2     him personally myself in Spanish, but yesterday we also had an

3     interpreter, Edgar Chacon, come to the jail with me to translate

4     the entire stipulated factual basis and the plea agreement to my

5     client.

6          THE COURT:  All right.  And did you -- did your

7     discussions with him, did it indicate to you that he understood

8     the contents?

9          MR. DUNHAM:  Yes, Your Honor.

10          THE COURT:  And by signing it, was he agreeing that it

11     was true?

12          MR. DUNHAM:  Yes.

13          THE COURT:  All right.  I'll have this marked as an

14     exhibit and attached to the file.

15          Mr. Sosa, Junior, I have here another eight page

16     document that on the last page has four signatures on it:  That

17     of Mr. Stamm and Mr. Johnson, the prosecutors; your attorney,

18     Mr. Petruzzi, and what appears to be a signature above your

19     name.  Is that your signature?

20          DEFENDANT RAUL SOSA JUNIOR:  Yes.

21          THE COURT:  Before you signed it, did you read it?

22          DEFENDANT RAUL SOSA JUNIOR:  Yes.

23          THE COURT:  Do you believe you fully understood it?

24          DEFENDANT RAUL SOSA JUNIOR:  Yes.

25          THE COURT:  Did you discuss it with your lawyer?

1            DEFENDANT RAUL SOSA JUNIOR:  Yes.

2            THE COURT:  Mr. Petruzzi, do you believe that your

3    client fully understood this at the time that he executed it?

4            MR. PETRUZZI:  Yes sir, Your Honor, I do.

5            THE COURT:  All right.  I'll have this marked as an

6    exhibit and attached to the file also.

7            Now you understand -- okay.

8            Would the Government summarize the essential terms of

9    the written plea agreement?  Summarize being the operative word?

10            MR. STAMM:  Yes, Your Honor.  Both Defendants are

11    agreeing to plead guilty to Count 1 of the superseding

12    indictment.  The Government is agreeing, as to both Defendants,

13    to dismiss Counts 2 through 5 of the superseding indictment

14    after sentencing.

15            Both Defendants and the Government have agreed to make

16    joint, nonbinding recommendation as to the basic applicable

17    sentencing guidelines framework for this particular offense as

18    to which provisions should govern it, and they're laid out in

19    detail within there.

20            As for Mr. Sosa, Junior, Mr. Sosa, Junior is attempting

21    -- has agreed to attempt to cooperate and the Government has

22    agreed to evaluate that cooperation fairly, but obviously any

23    ultimate decisions are made at the discretion of the office and

24    then ultimately to the Court.

25            As to both Defendants, there's an agreement that if

1    their guidelines comes over 16 and they satisfy certain

2    requirements as laid out in the plea agreement, including

3    committing no new crimes and full and truthful statements, that

4    we would recommend not just a two, but a third point reduction

5    for acceptance of responsibility if the guidelines were to hit

6    16 or above.

7           Both Defendants are agreeing to appellate waivers.

8           There are particular provisions that are

9    Defendant-specific as well, Your Honor.  And again, both

10   Defendants understand, as does the Government, as set out in the

11   agreements, that all the recommendations, either joint or

12   individual, are not binding on the Court or probation.

13          As to Mr. Sosa, Junior, after a full evaluation of all

14   the facts learned during the course of the investigation and

15   discussion, the Government will be recommending, I believe

16   Mr. Sosa, Junior agrees with the recommendation, that he should

17   receive a four level role reduction for a minimal role in the

18   offense, particularly arising from the fact that there was a

19   four level increase jointly agreed for the involvement of an

20   elected official.

21          There is no role adjustment agreed to or role

22   adjustment at issue with Mr. Sosa, Senior.

23          As well for both Defendants, there's a recommendation

24   that if they satisfy all the requirements set out in the

25   agreement for a full three point reduction, that we would seek a

1    sentence at the low end of the applicable guidelines determined

2    by the Court, Your Honor.

3            I think those are the points of agreement.

4            THE COURT:  Okay.  Mr. Sosa, Senior, you heard what the

5    Government said.  Is that your general understanding of the plea

6    agreement?

7            DEFENDANT RAUL SOSA SENIOR:  Yes.

8            THE COURT:  All right.  One very important thing is you

9    heard him say that there is a waiver of appellate rights.  You

10   are giving up a very important, substantial right of yours and

11   that is to appeal except under very limited circumstances.  If I

12   were to give you a sentence above the guideline range, or if the

13   Government appeals, then you can appeal.  But almost every other

14   instance, you would not have the right to appeal your sentence.

15           Do you understand that you're doing that?

16           DEFENDANT RAUL SOSA SENIOR:  Yes.

17           THE COURT:  Did you discuss that with your lawyer?

18           DEFENDANT RAUL SOSA SENIOR:  Yes.

19           THE COURT:  Mr. Dunham, do you believe that your client

20   freely, voluntarily and intelligently waived his appellate

21   rights?

22           MR. DUNHAM:  Yes, Your Honor.

23           THE COURT:  Did you discuss it with him in detail?

24           MR. DUNHAM:  Yes.

25           THE COURT:  All right.  I'll make a finding that he did

1   knowingly, intelligently and voluntarily waive his appellate

2   rights.

3            And I will attach his plea agreement to the court file.

4            Mr. Sosa, Junior, is that your general understanding of

5   the plea agreement, what was discussed by the Government?

6            DEFENDANT RAUL SOSA JUNIOR:  Yes.

7            THE COURT:  You understand that you are also waiving

8   your appellate rights and that it a very substantial right.  Did

9   you understand that?

10           DEFENDANT RAUL SOSA JUNIOR:  Yes.

11           THE COURT:  Mr. Petruzzi, do you believe that your

12   client -- did you discuss that with him?

13           MR. PETRUZZI:  Yes sir, Your Honor, I did.

14           THE COURT:  Do you believe that he did it knowingly,

15   voluntarily and intelligently?

16           MR. PETRUZZI:  Yes, sir.

17           THE COURT:  All right.  Then I will find that he did do

18   so, and I will attach his plea agreement to the file also.

19           Now do you understand, starting with Mr. Sosa, Senior,

20   that any recommendations that are made to me are just that,

21   recommendations, and I don't have to accept them.

22           DEFENDANT RAUL SOSA JUNIOR:  Yes.

23           DEFENDANT RAUL SOSA SENIOR:  Yes.

24           THE COURT:  Mr. Sosa, Junior do you understand that?

25           DEFENDANT RAUL SOSA JUNIOR:  Yes.

1          THE COURT:  Okay.  Other than what's contained in your

2    plea agreement, has there been any other or different promises

3    or assurances made to you of any kind in an effort to induce you

4    to enter a plea of guilty?

5          DEFENDANT RAUL SOSA SENIOR:  No.

6          DEFENDANT RAUL SOSA JUNIOR:  I didn't understand.

7          THE COURT:  I'll repeat the question.  Other than

8    what's contained in that plea agreement, has there been any

9    other or different promises or assurances made to you of any

10    kind or is this the entire agreement between you and the

11    Government?

12          DEFENDANT RAUL SOSA JUNIOR:  No.

13          THE COURT:  All right.  Is that the entire agreement

14    between you and the Government then?

15          DEFENDANT RAUL SOSA JUNIOR:  Yes.

16          THE COURT:  Okay.  Has anyone attempted in any way to

17    force you to plead guilty, Mr. Sosa, Senior, threatened or

18    coerced you?

19          DEFENDANT RAUL SOSA SENIOR:  No.

20          THE COURT:  Mr. Sosa, Junior?

21          DEFENDANT RAUL SOSA JUNIOR:  No.

22          THE COURT:  Do you understand that if I don't accept

23    any sentence recommendations, whether they be in your plea

24    agreement or by the Government or by your lawyer or anybody

25    else, you will still be bound by your plea of guilty and have no

1        right to withdraw it.

2                DEFENDANT RAUL SOSA SENIOR:  Yes.

3                DEFENDANT RAUL SOSA JUNIOR:  Yes.

4                THE COURT:  Do you understand if the sentence is more

5        severe than you expected it to be, you will still be bound by

6        your plea and have no right to withdraw it?

7                DEFENDANT RAUL SOSA SENIOR:  Yes.

8                DEFENDANT RAUL SOSA JUNIOR:  Yes.

9                THE COURT:  How do you now plead to Count 1 of the

10       indictment?  And we'll do this separately, Mr. Sosa, Junior, how

11       do you now plead to Count 1 of the superseding indictment

12       pending against you?  Guilty or not guilty?

13               DEFENDANT RAUL SOSA JUNIOR:  Guilty.

14               DEFENDANT RAUL SOSA SENIOR:  Guilty.

15               THE COURT:  All right.  It is the finding of this Court

16       in the case of the United States versus Raul Sosa, Senior that

17       the Defendant is fully competent and capable of entering an

18       informed plea.  That his plea of guilty is a knowing and

19       voluntary plea supported by an independent basis in fact

20       containing each of the essential elements of the offense.  His

21       plea is therefore accepted, he is now adjudged guilty of Count 1

22       of the superseding indictment pending against him.

23               Now Mr. Sosa, Junior, how do you now plead to Count 1

24       of the superseding indictment pending against you?  Guilty or

25       not guilty?

1          DEFENDANT RAUL SOSA JUNIOR:  Guilty.

2          THE COURT:  It is the finding of this Court in the case

3     of the United States versus Raul Sosa, Junior that the Defendant

4     is fully competent and capable of entering an informed plea.

5     That his plea of guilty is a knowing and voluntary plea

6     supported by an independent basis in fact containing each of the

7     essential elements of the offense.  His plea is therefore

8     accepted, he is now adjudged guilty of Count 1 of the

9     superseding indictment against him.

10         A written presentence report will be prepared by the

11    Probation Office to assist me in sentencing each of you.  You

12    will be asked to give information for the report and your

13    attorney may be present if you so desire.  I will permit you and

14    your counsel to read the presentence report before the

15    sentencing hearing, and you will be given an opportunity to

16    speak at that hearing which I'm hereby scheduling for Monday,

17    August 6th, 2018, at 1:30 p.m. as to Mr. Sosa, Senior and at 2

18    p.m. as to Mr. Sosa, Junior.

19         MR. PETRUZZI:  I hate to do this, Your Honor.  August

20    6th I'm going to be on my usual prepaid vacation, it's the last

21    week before school starts for the kids.  I'll be returning on

22    the 13th.

23         THE COURT:  Just deal with Wanda, she'll give you

24    another date.

25         MR. PETRUZZI:  Thank you, sir.

1          THE COURT:  Counsel is advised to comply with

2     administrative orders regarding implementation of sentencing

3     procedures, particularly time period within those orders.

4          I refer you to the Probation Office for a presentence

5     investigation and report.

6          Now Mr. Sosa, Senior, is incarcerated, correct?  He's

7     in custody?

8          MR. STAMM:  Yes, Your Honor.

9          THE COURT:  All right.  You will remain in custody.

10         Mr. Sosa, Junior, what is the recommendation of the

11    Government?

12         MR. STAMM:  We'd ask that he remain on bond on the same

13    conditions.  He's been totally compliant and totally

14    cooperative.

15         THE COURT:  Mr. Sosa, Junior I'll permit you to remain

16    at liberty on the same terms and conditions upon which you were

17    released up to now.  You've been advised as to when you're

18    required to appear for sentencing, which might be changed upon

19    your lawyer talking to the courtroom deputy.  But failure to

20    appear is a criminal offense for which you could be sentenced to

21    imprisonment over and above any underlying violation.  All the

22    conditions upon which you were released up to now continue to

23    apply, and the penalties for violating those conditions can be

24    severe.

25         Counsel, if you have any specific requests for

1    treatment modalities or place of incarceration, please raise it

2    during the presentence investigation.  If it's raised for the

3    first time at the time of sentencing, I will not consider it.  I

4    do not want to get into a lifelong set of correspondence with

5    the Bureau of Prisons while they tell me that they can't send

6    them to the prison for criminally insane women that you've asked

7    me to send them to.  Okay?  We'll be in recess.

8           COURT SECURITY OFFICER:  All rise.

9           MR. DUNHAM:  Thank you, Your Honor.

10          MR. PETRUZZI:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          (PROCEEDINGS CONCLUDED)

13                        * * * * *

14                    C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
15   record of proceedings in the above-entitled matter.

16

17   10/3/2018              /s/ Dawn M. Savino
     Date                   DAWN M. SAVINO, RPR

18

19

20

21

22

23

24

25

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**