```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                    CASE NO. 18-CR-20256-MARTINEZ


UNITED STATES OF AMERICA,              Miami, Florida

          Plaintiff,                   August 24, 2018

vs.                                    3:39 p.m. to 4:01 p.m.

RAUL SOSA, SR.,                        Pages 1 to 18

          Defendant.
_____


                         SENTENCING HEARING
              BEFORE THE HONORABLE JOSE E. MARTINEZ
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE GOVERNMENT:       EDWARD STAMM, ESQ.
                          MAURICE JOHNSON, ESQ.
                          ASSISTANT UNITED STATES ATTORNEY
                          99 Northeast Fourth Street
                          Miami, Florida 33132


FOR THE DEFENDANT:        CHRISTIAN DUNHAM, ESQ.
                          FEDERAL PUBLIC DEFENDER'S OFFICE
                          150 West Flagler Street
                          Miami, Florida 33130


STENOGRAPHICALLY REPORTED BY:

                          PATRICIA DIAZ, FCRR, RPR, FPR
                          Official Court Reporter
                          United States District Court
                          400 North Miami Avenue
                          11th Floor
                          Miami, Florida 33128
                          (305) 523-5178
```

```
 1            (Call to the Order of the Court.)
 2            COURTROOM DEPUTY:  Case number 18-20256-CR-Martinez,
 3   United States of America versus Raul Sosa, Sr.
 4            Counsel, please state your appearance.
 5            MR. STAMM:  Good afternoon, Your Honor, Edward Stamm
 6   and Maurice Johnson, Assistant United States Attorneys.  With
 7   us is Special Agent Willie Creech of the FBI and Special Agent
 8   Joseph Perera of the IRS.
 9            THE COURT:  Good afternoon, gentlemen.
10            MR. DUNHAM:  Thank you, Your Honor.  Good afternoon,
11   Christian Dunham, Assistant Federal Public Defender on behalf
12   of Raul Sosa, who is present with the services of a Spanish
13   interpreter.
14            THE COURT:  Good afternoon.
15            All right.  We are here on a sentencing.  Can I get an
16   appearance from Probation.
17            THE PROBATION OFFICER:  Good afternoon, Your Honor,
18   Mercedes Sornoza on behalf of U.S. Probation.
19            THE COURT:  Ms. Sornoza.
20            All right.  We are here on the sentencing.  I have
21   reviewed the stipulated factual basis and written plea
22   agreement, the presentence investigation.  The defendant
23   requests designation to FCI, Miami, Florida.
24            I am not going to be that specific but I will recommend
25   that he be incarcerated as close to South Florida as possible,
```

1   as close to the Miami area as possible, commensurate with his
2   background and the offense for which he stands convicted.
3          Unfortunately, we have an awful lot of people that have
4   been flown in here from Puerto Rico that are kind of filling
5   our local facilities, so I don't know.
6          I have reviewed the adjustment for acceptance of
7   responsibility, the addendum, that no objections have been
8   reported by either side.  I'm ready to proceed at this time.  I
9   am happy to hear from both sides starting with the Government
10  as to what you believe is an appropriate sentence.
11         MR. STAMM:  Yes, Your Honor, as a starting point, we
12  believe as we had stated we would in the plea agreement we
13  jointly recommend that the guideline range is accurately
14  computed in the presentence investigation, and that based on
15  that range of 18 and the criminal history category of 2 that
16  the advisory guidelines range which is the starting point for
17  consideration is 30 to 37 months.
18         It's the position of the United States, Your Honor,
19  that a reasonable sentence after consideration of the 3553(a)
20  and 3584(b) factors, which deals with consecutive versus
21  concurrent because Mr. Sosa is currently serving a separate
22  unrelated federal sentence, that those would urge as the
23  appropriate reasonable sentence, a sentence of 30 months
24  incarceration and that it all be served consecutive to the
25  sentence that was imposed by Judge Moore in case

1  15-20170-CR-Moore, which was a sentence imposed after
2  conviction for various tax offenses after a trial.
3          Going through the relevant, what we believe the most
4  relevant 3553(a) factors, starting with one, the nature and
5  circumstance of the offense, we believe that this offense which
6  was a bribery in connection with obtaining a city contract is
7  certainly a serious offense.  It has a number of impacts,
8  injuring the public interest, undercutting faith in municipal
9  government and how government works, cheating out honest
10 bidders --
11         THE COURT:  What faith is there in the municipal
12 government?  Where did you find that faith that you can
13 undermine?
14         MR. STAMM:  Well, our hope is by trying to defend it we
15 can restore it, Your Honor.
16         THE COURT:  I hope so.
17         MR. STAMM:  Obviously, honest bidders that aren't
18 paying bribes are affected because the contract selection goes
19 from a merit-based selection, which it is supposed to be, to
20 simply buying a contract with an extra payment, and that's not
21 appropriate.  I think this factor cuts in favor of a full
22 consecutive sentence also because the contract bribery had
23 nothing to do with the tax offenses.  They are totally
24 unrelated, so thus separate.
25         More importantly, this offense was committed, started,

1  carried out and finished while he was on bond on the tax case,
2  and I will address that further as we go along.
3       In terms of the history and characteristics of the
4  offender, I will note for the Court as the Court has seen from
5  the presentence investigation.  He has a number of brushes with
6  the law, including prior convictions separate and apart from
7  the tax case in front of Chief Judge Moore as well as other
8  arrests.
9       In this case he was -- excuse me, in the prior case he
10 was indicted on March 17th, 2015.  He had his initial
11 appearance and was released on bond on March 20th, 2015, and
12 approximately one month later began the conduct which was the
13 towing contract bribery conspiracy while he was out on that
14 bond awaiting his trial, which took place in November of 2015.
15      He was convicted in February of 2016, was sentenced by
16 Chief Judge Moore to 78 months in prison for the tax offense.
17      This case had not been charged at the time.  It was no
18 part of factoring into that sentence in any way because if not
19 he would have been brought to light.
20      On top of that, interestingly enough, he has a criminal
21 history Category 2 in this case.  We believe that is the
22 appropriate scoring and I will note that in Judge Moore's case
23 he was a criminal history Category 3 but --
24      THE COURT:  That timed out.
25      MR. STAMM:  -- the conduct in that case has extended

1  back so it timed out, but we believe that the guidelines are
2  appropriate and that the range should be set in that criminal
3  history Category 2.  Thus, we think the 30 months, so long as
4  it's all consecutive, is sufficient.
5            THE COURT:  Let me ask you one other factor, Mr. Stamm.
6            MR. STAMM:  Yes.
7            THE COURT:  As is becoming well known, there are
8  denaturalization consequences when crimes are committed that
9  affect naturalization.
10           I do not believe that they fit in this case because his
11 naturalization was in 1994, which I think is, what, 24 years
12 ago.  I don't think that any of these factors in this case have
13 anything to do with prior to 1994.
14           Do you agree?
15           MR. STAMM:  Correct.  Our conduct happened in 2015.
16           THE COURT:  Okay.
17           MR. STAMM:  The tax case although it spreads back a
18 while doesn't --
19           THE COURT:  I just wanted to make sure because I didn't
20 want to jump up from behind a rock and surprise the defendant.
21           MR. STAMM:  No, if it's there, we haven't found that.
22 This case is contained in that 2015.
23           THE COURT:  I am starting to look at it in every case
24 to make sure if it's there that I am aware of it so the
25 defendant is aware of that.

```
 1             MR. STAMM:  I am not aware of that because of how long
 2   he had been naturalized.
 3             THE COURT:  I agree.  I think you are right.
 4             MR. STAMM:  3553(2) talks about, in the phase section
 5   reflecting the seriousness of the offense, promoting respect
 6   for the law and providing just punishment.
 7             Again, because of the nature of the offense, we believe
 8   that 30 months is a fair balance.  It's not more than is needed
 9   but not less than is needed either in light of his criminal
10   history and the seriousness of the conduct.  But most
11   important, and what I want to stress is we think this factor
12   can only be served by making the entire sentence consecutive.
13             A full consecutive sentence is not mandatory, but I
14   will note for the Court that under Eleventh Circuit law the
15   preference, the choice prefers to and I think they talk about
16   it as being it evinces a preference for a consecutive sentence
17   when the sentences are imposed at different times such as we
18   have here.
19             THE COURT:  Do I have to articulate two consecutives
20   because it looks to me like I might have to?
21             In other words, the first 24 months sentence is
22   consecutive to Judge Moore's and the six-month sentence is
23   consecutive to the 24 month sentence, isn't it?
24             MR. STAMM:  It appears under 31 -- 18 U.S.C. 3147 that
25   there does need to be that separate consecutive.  The portion
```

```
 1    for the bump up for being on bond is a mandatory consecutive.
 2             THE COURT:  Right.
 3             MR. STAMM:  We believe it all should be but, yes, we
 4    think it's most appropriate to split it in that fashion.
 5             THE COURT:  The question is, I think I have to
 6    articulate the two consecutives.
 7             MR. STAMM:  Yes, we agree with that.
 8             THE COURT:  All right.
 9             MR. STAMM:  Most importantly, we feel in terms of the
10    consecutive versus concurrent that if any portion is made
11    concurrent then it is essentially giving a discount and
12    essentially sentencing him to a lower sentence --
13             THE COURT:  If there is anybody that's entitled to a
14    quantity discount, it's this defendant.  I mean, really, come
15    on.
16             MR. STAMM:  Maybe for other things, Your Honor, but we
17    believe that he is not entitled to that.  His current sentence
18    according to BOP website shows a release date in July of 2021,
19    which is about 34 months out, so it isn't like a concurrent
20    sentence.  If it was concurrent even in part, all of that would
21    just kind of vanish and he will only get the consecutive
22    portion.  So we think it is most appropriate that it be imposed
23    consecutively.
24             THE COURT:  All right.
25             MR. STAMM:  At the same time, Your Honor, we think the
```

1  low end is appropriate.  We are not asking for the Court to go
2  above the low end despite the criminal history and everything,
3  because to his credit, shortly after the indictment was
4  returned, we got our discovery out, and Mr. Dunham contacted me
5  very quickly that his client wanted to resolve it.
6          So to the extent defendants earned the three points, I
7  think he earned the three points very much, so that's why we
8  are asking for a sentence at the lower end.  At the same time,
9  the factor of 3553, the c factor of protecting public, we do
10 think that his record has shown that the extra 30 months tacked
11 on top provides the appropriate maximum kind of protection that
12 the public should have, but we don't ask to go above it.
13         THE COURT:  Let me ask you this; this hasn't happened
14 yet but isn't his son going to be sentenced soon?
15         MR. STAMM:  Yes, September 7th, Your Honor.
16         THE COURT:  What do you think is the relative guilt of
17 the two?
18         MR. STAMM:  Yes, Your Honor.  Well, first, we filed a
19 5K1 motion for the son --
20         THE COURT:  Okay.
21         MR. STAMM:  -- because when confronted immediately
22 indicted he agreed to cooperate and, in fact, offered
23 cooperation not only against a co-conspirator charged in
24 another case Mr. Starks, but actually against his father.
25         In addition, we will be recommending to the Court and I

1  believe the probation officer agreed in their recommendation in
2  the PSI for a four-level reduction for a minimal role for the
3  son.
4          The deal was really negotiated by Mr. Sosa, Sr.  His
5  son was sent in to carry it out, make payment, kind of see it
6  all through.  So, obviously, he would be the more responsible
7  individual.  We will be asking for a significantly less
8  sentence for Mr. Sosa, Jr., who has no criminal record of any
9  note and will be in a criminal history Category 1.
10         THE COURT:  There is a substantial differential there
11 then?
12         MR. STAMM:  Yes, very substantial, we believe, both in
13 how they conducted themselves in the offense and the conduct
14 afterwards.
15         I think that kind of covers it.  I can cite to the
16 Court if the Court wants citation regarding the case law I
17 referenced regarding the preference for consecutive, although I
18 will note it's not mandatory, seems to be the leading case,
19 United States versus Ballard, B-A-L-L-A-R-D, 6 F.3d 1502 at
20 1506.  It's Eleventh Circuit 1993.
21         There are a number of more recent decisions as well
22 that cite -- I will cite only one.  I can cite more to the
23 Court, if you wish.
24         United States versus William, 592 Fed Appx 828, at page
25 830, Eleventh Circuit 2014 and just I had sent over these cases

1   as well to Mr. Dunham so I wouldn't surprise him with it.
2           THE COURT:  You don't have to surprise Mr. Dunham.  He
3   is too good for that.
4           MR. DUNHAM:  Thanks.
5           THE COURT:  He is always ready.
6           MR. STAMM:  Unless you have any other questions at this
7   point --
8           THE COURT:  Not at this point.  Thank you, sir.
9           Mr. Dunham, I am happy to hear from you and/or the
10  defendant.
11          MR. DUNHAM:  Thank you, Your Honor.
12          At first I want to note his wife and daughter are
13  present in the courtroom.
14          We are not very far off from the Government.  I mean, I
15  don't -- I think my client is remorseful.  He got his son
16  involved in this.  I think, factually, what the Government said
17  is accurate.  It was my client's deal.  Since he got his son
18  involved he felt very bad about that and that's one of the
19  factors he plead guilty and timely because he wanted to try to
20  actually help assist his son in hopefully getting a lesser
21  sentence.
22          So he is not here, you know, to beg the Court for
23  leniency.  He understands what the situation is.  Really the
24  only difference we have, Your Honor, is I think the Court said
25  it exactly right.  I believe you have to sentence him for the

1   underlying offense of bribery as well as the for the 3147, for
2   doing it while he was out on bond so it does have to be two
3   sentences.
4           So the only difference I believe we have is I am asking
5   the Court to sentence him to 21 months concurrent and nine
6   months consecutive.  The reason is because there is already --
7   he got a three point bump up in the guidelines for doing the
8   offense while he is out on bond.
9           THE COURT:  Mr. Dunham, his record is horrible.
10          MR. DUNHAM:  It's bad.
11          THE COURT:  It's only a 2, but it's only because some
12  them are old enough that they timed out.  I mean, he is a
13  walking crime wave.
14          I mean, if you look at his record it starts when he was
15  18, and he is not a kid anymore.  These are the ones -- and we
16  are not talking about juvenile adjudications.  We're talking
17  about adult criminal convictions, one page, two pages, three
18  pages, four pages, all with zero points because of the time,
19  five pages, six pages -- or five-and-a-half pages -- no, six
20  pages, seven pages.  Now they are starting to count.
21          Then we are talking about the ones with the other
22  criminal conduct 1, 2, 3 pages.  I mean, we're talking about
23  not a life of charity and good works.
24          MR. DUNHAM:  No, exactly.  I think -- well, first of
25  all, I point out, I always wish that the PSI when it times out

```
 1   I wish they wouldn't include the record.
 2           THE COURT:  I bet you do.  I bet you do, but I think I
 3   am entitled to see the whole picture.
 4           MR. DUNHAM:  Of course.  That was a joke.
 5           THE COURT:  You see, I told you he had a sense of
 6   humor.
 7           MR. DUNHAM:  It's there.  The record is there.  Your
 8   Honor, if I could just point out a few things on 3553 factors.
 9   Like I said, he is not here to -- we are very appreciative that
10   the Government is recommending 30 months as opposed to 37 or
11   even higher because, frankly, the maximum he can get is
12   60 months.
13           THE COURT:  Mr. Dunham, my inclination was not at the
14   low end of the guideline, and I do respect Mr. Stamm.  He has
15   been around a while and has always talked straight to me, so
16   I'm listening to him.  But my inclination in a matter involving
17   bribery of public officials is not the low end.
18           I think I'm going to do that because he has other
19   problems that he has dealt with.
20           MR. DUNHAM:  That's what I was going to point out,
21   Judge, in terms of -- I will point out his projected release
22   date right now is July 6, 2021.  He hasn't had any -- according
23   to the PSI, he hasn't had any disciplinary problems in prison
24   since 2015.
25           He does have his family support.  He has some health
```

1  conditions which I want to point out which are indicated in the
2  PSI and I just want to get to that.
3  　　　　He has diabetes, Your Honor.  He also had two heart
4  attacks, one in 1996 and one in 2003.  He has had two episodes
5  of being in a diabetic coma in 2000 and 2006.  So, he is
6  relatively young but he has some health issues.  So, I think,
7  obviously, I am totally in agreement that at least part of the
8  sentence has to be consecutive under the law.  I guess really
9  the question really is how much do you think he needs after
10 2021.  I mean, that's up to the Court's discretion.
11 　　　　His family members are here.  They support him.  He --
12 like I said, he plead guilty timely and I think that does show
13 some respect for the law at least in this case.
14 　　　　We attempted to do a debriefing but that matter did not
15 materialize so he decided not to do that, but his real intent
16 was just to help his son and he does agree that he is more
17 culpable than his son and he is hoping that the Court will
18 sentence his son more favorably than him.
19 　　　　I am not sure if Mr. Sosa wishes to say anything to the
20 Court.
21 　　　　THE COURT:  I will be happy to hear from you, sir, if
22 you wish to say anything to me.
23 　　　　THE DEFENDANT:  No, thank you.
24 　　　　THE COURT:  Okay.  Thank you, sir.
25 　　　　MR. DUNHAM:  So, Judge, under 3147, I'm looking at the

1  application note, and the Court should divide the sentence on
2  the judgment form between the sentence attributable to the
3  underlying offense and the sentence attributable to the --
4          THE COURT:  You are too tall.  I can't hear you.  You
5  can even talk to me sitting down.  I don't care.  I just want
6  to hear.
7          MR. DUNHAM:  Thank you, Your Honor.  That might be
8  easier.
9          I'm just looking at the application note, and it does
10 say the Court should divide the sentence on the judgment form
11 between the sentence attributable to the underlying offense and
12 the sentence attributable to the enhancement.
13         THE COURT:  Okay.  I gotta split those and then I have
14 to add them to the others also, if I choose to.
15         MR. DUNHAM:  I think the Court needs to determine how
16 many months total you want to sentence Mr. Sosa to and then you
17 divide it up however the Court wants to divide it up.
18         THE COURT:  Thank you.  Anything further from either
19 side?
20         MR. STAMM:  Only after sentence is imposed we will move
21 to dismiss Counts 2 through 5 per the plea agreement.
22         THE COURT:  I will give you a chance to do that.
23         MR. STAMM:  All right.
24         THE COURT:  The Court has considered the statements of
25 all the parties, presentence report which contains the advisory

1    guidelines and the statutory factors set forth in 18 U.S.C.
2    Section 3553(a).
3              It is the finding of the Court that the defendant is
4    not able to pay a fine.  I'd like the probation officer to
5    listen to me and if I say it wrong to correct me because I want
6    to make sure I do this right.
7              It is the judgment of the Court that the Defendant Raul
8    Sosa, Sr., is committed to the Bureau of Prisons to be
9    imprisoned for 30 months, which consists of 24 months as to
10   Count 1 and consecutive six months pursuant to the enhanced
11   penalty provided by 18 U.S.C., Section 3147.
12             These 30 months are to be consecutive to the sentence
13   imposed in 15-criminal-20170-CR-Moore.
14             Is that enough?
15             THE PROBATION OFFICER:  That's perfect, Your Honor.
16             THE COURT:  All right.  Upon release from imprisonment
17   the defendant shall be placed on supervised release for a term
18   of three years as to Count 1.  Within 72 hours of release the
19   defendant shall report in person to the probation office in the
20   district where released.
21             While on supervised release, the defendant shall comply
22   with the mandatory and standard conditions of supervised
23   release, which include not committing any crimes, prohibition
24   from possessing a firearm or other dangerous device, not
25   unlawfully possessing a controlled substance, cooperation in

1   the collection of DNA.

2           The defendant shall also comply with the following
3   special conditions, substance abuse treatment, financial
4   disclosure requirement, self-employment restriction, no new
5   debt restriction, related concern restriction and unpaid
6   restitution, fines or special assessments as noted in Part G of
7   the presentence report.  Further ordered, the defendant shall
8   pay immediately to the United States a special assessment of
9   $100 as to Count 1.

10          The total sentence, 30 months imprisonment, three years
11  supervised release and $100 special assessment.

12          Now that sentence has been imposed, does the defendant
13  or counsel object to the Court's findings of fact or the manner
14  in which sentence was pronounced?

15          MR. DUNHAM:  No, Your Honor.

16          THE COURT:  Are there additional counts to be
17  dismissed, Mr. Stamm?

18          MR. STAMM:  Yes, Your Honor.  We would move to dismiss
19  Counts 2 through 5, Your Honor.

20          THE COURT:  All right.  Upon motion of the Government
21  Counts 2 through 5 will be dismissed as to this defendant.  You
22  have the right to appeal the sentence imposed.  Any notice of
23  appeal must be filed within 14 days after the entry of the
24  judgment.

25          If you are unable to pay the cost of an appeal, you may

1  apply for leave to appeal in forma pauperis.

2       And as I said earlier, I will request the Bureau of

3  Prisons that they incarcerate him as close to the City of Miami

4  as is possible commensurate with his background and the offense

5  of which he stands convicted.  We are in recess on this matter.

6       MR. DUNHAM:  Thank you, Your Honor.

7       (The proceedings were concluded at 4:01 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an
accurate transcription of the proceedings in the
above-entitled matter.

October 12, 2018      /s/Patricia Diaz
DATE                  PATRICIA DIAZ, FCRR, RPR, FPR
                      Official Court Reporter
                      United States District Court
                      400 North Miami Avenue, 11th Floor
                      Miami, Florida 33128
                      (305) 523-5178